```
                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF INDIANA
                        HAMMOND DIVISION


ZLATICA MALBASA,               )
                               )
          Plaintiff            )
                               )
     v.                        )   Case No. 2:06 cv 179
                               )
AMERICAN FAMILY MUTUAL         )
INSURANCE COMPANY,             )
                               )
          Defendant            )
```

OPINION AND ORDER

This matter is before the court on the motion for summary judgment filed by the defendant, American Family Mutual Insurance Company, on June 25, 2007. For the reasons set forth below, this motion is **DENIED**.

Background

The plaintiff, Zlatica Malbasa, operated the retail store, Avala European Imports, in Highland, Indiana. (Affidavit of Zlatica Malbasa, ¶ 5) The store featured food and other items from Malbasa's native Serbia. Through the store, Malbasa also owned several video tapes, referred to as "master tapes," purchased in Serbia and copied for sale in her store and other stores throughout the United States. (Malbasa Aff. ¶ 4)

At 6:25 a.m. on January 24, 2005, the Highland Fire Department was summoned to the retail center at which Avala was located. (Def. Mot. Exh. 1) The fire department arrived approximately 10 minutes later and reported that, by 11:00 a.m., the

fire was controlled.[1] (Def. Mot. Exh. 1)  The fire department report further indicated that by the time they arrived, the building's sprinkler system had extinguished 98 percent of the fire. (Def. Mot. Exh. 1) The report further stated that "ATF was requested to conduct investigation due to commercial nature of business and large amount of video tape product." (Def. Mot. Exh. 1)

Malbasa's business was insured by the defendant, American Family Mutual Insurance, which initially paid $22,707.39 to compensate Malbasa for business income loss and covered business property. (Affidavit of James R. Andersen, ¶ 6) Malbasa alleged losses of more than $500,000, including over $400,000 for the loss of 1,150 "master video originals" valued at $300 to $500 each. (Def. Mot. Exh. 3)

Malbasa's policy with American Family included a provision that eliminated coverage for "accounts, bills, food stamps, other evidence of debt, accounts receivable or 'valuable papers and records.'" (Def. Mot. Exh. 2) The policy further defined "valuable papers and records" to include those stored as "electronic media or records," which itself is further defined to include "valuable papers and records" converted to data and  stored on "disks, tapes, film, drums, cells, or other media which are used with electronically controlled equipment."  (Def. Mot. Exh. 2)

---

[1] The details of the fire are sparse in the summary judgment record. In a separate report, the plaintiff's expert makes reference to several discovery responses that create some inconsistency with the fire department report. These discovery responses are not included in the record, and the admissibility of this expert's affidavit is being challenged separately.

2

Pursuant to an extension in coverage, American Family provided $10,000 in coverage for "valuable papers and records." (Def. Mot. Exh. 2) The policy also included an exclusion of coverage that stated, "We will not pay for loss or damage caused by or resulting from . . . dishonest or criminal acts by you." (Def. Mot. Exh. 2)

American Family relied on this exclusion and the electronic media definition to resist further payment on Malbasa's claims. American Family claimed that the "master video tapes" fall within the $10,000 limit to valuable papers and records and that its previous payment fulfilled its obligation.

American Family also denied any further coverage because it had evidence implicating the coverage exclusion based on dishonest conduct by the insured. Through its investigation of the fire, American Family concluded that the fire was set intentionally. This conclusion was based on the failure to find evidence of an electrical cause of the fire and the absence of candles, cigarettes, incense, or a liquid accelerant at the scene. American Family also obtained a surveillance video that showed Malbasa entering the store sometime after 10:00 p.m. the evening before the fire.

Malbasa disputed this assertion, noting that the time stamp on the surveillance video was 7:02 p.m. She stated that the day before the fire she closed the store at 4:00 p.m. and arrived home by 4:45 p.m. She further stated that she spent the next three hours with her stepdaughter, and a friend of her stepdaugh-

3

ter, cleaning their home following a birthday party that was held the night before. In her affidavit, Malbasa stated that she was unaware of the fire until she arrived at the store that morning. In her complaint, she seeks compensation for the loss at the policy's maximum of $500,000.

Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986); *Williams v. Excel Foundry & Machine, Inc*, 489 F.3d 309, 310 (7th Cir. 2007); *Treadwell v. Office of the Illinois Secretary of State*, 455 F.3d 778, 781 (7th Cir. 2006); *Branham v. Snow*, 392 F.3d 896, 901 (7th Cir. 2004). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004) 391 F.3d at 841. A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Ballance v. City of Springfield, Illinois Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004); *Palmer*

*v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003).  Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts.  *Spiegula v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004); *Hines v. British Steel Corporation*, 907 F.2d 726, 728 (7th Cir. 1990).  Finally, summary judgment "will not be defeated simply because motive or intent are involved."  *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir. 1994).  *See also* *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999); *Plair v E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir. 1997); *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

5

*See also* **Scott v. Harris**, ___ U.S. ___, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment."); **Celotex Corp**., 477 U.S. at 322-323, 106 S.Ct. at 2553; **Branham**, 392 F.3d at 901; **Lawrence**, 391 F.3d at 841; **Hottenroth**, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); **Schuster v. Lucent Technologies, Inc**., 327 F.3d 569, 573 (7th Cir. 2003).

Under Indiana law, an insurance contract is construed as a matter of law, according to the general principles of contract law. **Knight v. Indiana Insurance Company**, 871 N.E.2d 357, 361 (Ind. App. 2007). The court will not extend or restrict the scope of coverage of an unambiguous insurance contract. **Bedwell v. Sagamore Insurance Company**, 753 N.E.2d 775, 779 (Ind. App. 2001). However, if a policy is ambiguous, a dispute over its interpretation is "construed strictly against the insurer." **Bedwell**, 753 N.E.2d at 779.  "The terms of a contract are not ambiguous merely because the parties disagree as to the proper interpretation of the terms." **Arrotin Plastic Materials of Indiana v. Wilmington Paper Corp**., 865 N.E.2d 1039, 1041 (Ind. App. 2007)(*quoting* **Four Winds, LLC v. Smith & DeBonis, LLC,** 854 N.E.2d 70, 74 (Ind. App. 2006)). Rather, ambiguity requires that a reasonable person could find the terms susceptible to more than one interpretation.

6

*Arrotin Plastic Materials*, 865 N.E.2d at 1041; *Newnam Manufacturing Inc. v. Transcontinental Insurance Company*, 871 N.E.2d 396, 401 (Ind. App. 2007).

The parties' initial dispute regards the interpretation of the policy's "valuable papers and records" coverage limit. This provision is ambiguous. It purports to limit coverage to a series of particular items - accounts, bills, and food stamps. Then, it includes other items generally through the term "other evidence of debt." The provision illustrates the rule of *ejusdem generis*, which states that a general term that follows a more specific list is construed as being of the same kind as the specific item. See *U.S. v. Security Management Company, Inc.*, 96 F.3d 260, 265 (7th Cir. 1996); *Cooper Distributing Company, Inc. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 280 (3rd Cir. 1995). Consequently, this provision appears to equate valuable papers and records with records that demonstrate amounts that are owed to the insured. This, however, requires that the phrase "other evidence of debt" be read to refer more narrowly to debt owed to the business.

However, the language of the policy continues after its reference to "other evidence of debt" to include the phrase "accounts receivable or 'valuable papers and records.'" The clause becomes more ambiguous with this addition. Certainly, "accounts receivable" indicates another type of evidence of debt owed the business, raising the question of how this reference to "accounts receivable" was intended to denote something distinct

7

from the earlier reference to "accounts." Further, these specific terms are followed by the general reference to "valuable papers and records." There is no indication of what makes these papers valuable apart from the context of this section and the continued application of *ejusdem generis*, which leads to the conclusion that this phrase relates to "papers or records" that regard debt owed the company. At most, these terms describe records indicating the business' financial status. The master video tapes in dispute, which appear to be sold as entertainment of particular interest to native Serbians, seem well beyond the reach of this provision.

The defendant next argues that the policy's definition of "electronic media" requires the conclusion that the master video tapes are "valuable papers or records." Clearly, the policy's definitions contemplate that a "valuable paper or record" may be converted to "data" and stored electronically. However, it is flawed logic to suggest that because valuable papers and records can be stored as electronic data, all electronic data consequently is a valuable paper or record.  Though the record does not make the purpose or content of the master videos entirely certain, it is clear that they did not contain anything like a business record and were items sold in the store, more akin to inventory. Accordingly, American Family's motion for summary judgment based on the $10,000 limit to valuable papers and records, is denied.

American Family also seeks to limit any further coverage

8

based on a provision in the policy that excludes coverage when the dishonesty of the insured caused the loss or was material to the investigation. American Family argues that this is not an assertion of an arson defense.  The argument is based on sections of the policy that permit American Family to deny coverage if the insured's dishonesty caused the loss or was a material misrepresentation regarding a claim.

The factual dispute at the heart of American Family's argument is whether Malbasa returned to the store after closing the night before the fire, and if so, at what time. This dispute presents a question of fact that is not appropriate for resolution on summary judgment. American Family states that she entered after 10:00 p.m. The time stamp on the surveillance video read 7:02 p.m. Malbasa, in her affidavit, stated that by 10:00 p.m, she already was in bed for the evening. Further, the policy does not void coverage for *any* misrepresentation by the insured. Rather, only "material" misrepresentations have this consequence. Consequently, this dispute over Malbasa's whereabouts the night before the fire is material only if it is related to the origin of the fire. The argument that Malbasa caused the fire, and the separate argument that Malbasa concealed a material fact about the claim (i.e. that she returned to the store that evening), both turn on the presumption of a causal relationship between Malbasa's conduct and the fire. American Family counters that the materiality is not based on an allegation that Malbasa started the fire but that she lied about returning to the store and

9

shutting off the surveillance camera, preventing American Family from fully investigating who else may have started the fire. Even if the court were to consider this argument as distinct from an arson defense, a factual dispute still lies at the heart of American Family's argument that is not subject to resolution at summary judgment. Specifically, Malbasa testified that she did not return to the store that evening.

Under Indiana law, an insurer is entitled to an arson defense when it can show "sufficient motive and opportunity of the insured to commit arson . . . combined with proof of the incendiary cause of the fire." **Dean v. Insurance Company of North America**, 453 N.E.2d 1187, 1194 (Ind. App. 1983). *See also* **Cincinnati Insurance Company v. Compton**, 569 N.E.2d 728, 729 (Ind. App. 1991)("Mere opportunity or suspicion does not establish [the arson] defense by a preponderance of the evidence."); **Spicer v. Liberty Mutual Fire Insurance Company**, 4:06 CV 149, 2007 WL 2363369 (Aug. 15, 2007, S.D. Ind.)("Under Indiana civil arson law, a jury may find (but is not required to find) that an insured committed arson based on evidence that the fire was set intentionally and that the insured had both the motive and opportunity to set the fire.").

Each of the elements American Family must prove in support of summary judgment on this defense is subject to factual disputes, even without consideration of Malbasa's contested expert. In light of the uncertainty regarding whether Malbasa returned to the store and, if so, at what time, the court cannot conclude

10

that Malbasa had the opportunity to set this fire. Further, while it appears that the fire had burned itself out by the time the fire department arrived at 6:25 a.m., there is no evidence of when it began. Nevertheless, American Family's expert stated that, based on the inability to find an accidental cause of the fire's origin and the uncertainty regarding Malbasa's return to the store, that "Malbasa was more likely than not involved in the cause of the fire." This is an inappropriate conclusion to draw at summary judgment and can be drawn only by construing all disputes against the non-moving party. Malbasa stated that the afternoon before the fire she and a friend were smoking and that she left at 4:00 p.m. She stated that she did not return until the following morning. Further, Malbasa also stated that the business was profitable and growing. American Family has presented no evidence to support an inference that Malbasa had a motive to cause this fire. In light of these numerous factual inconsistencies, American Family is not entitled to summary judgment on its defense that Malbasa caused or made dishonest representations regarding the claim. Accordingly, the motion is DENIED.

_____

For the foregoing reasons, the motion for summary judgment filed by the defendant, American Family Mutual Insurance Company, on June 25, 2007, is **DENIED.**

ENTERED this 22nd day of October, 2007

```
                              s/ ANDREW P. RODOVICH
                                 United States Magistrate Judge
```